IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANASTASIA VICTORINA LEHUANANI ABBEY, | CIVIL NO. 09-00545 SOM-BMK |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS |
| vs. | |
| HAWAII EMPLOYERS MUTUAL INSURANCE COMPANY (HEMIC); MICHAEL REDMAN; ROBERT DOVE; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-20, | |
| Defendants. | |

ORDER GRANTING IN PART DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS

I.      INTRODUCTION.

        Plaintiff Anastasia Victorina Lehuanani Abbey, who
worked for Defendant Hawaii Employers Mutual Insurance Company
("HEMIC") for about six years, was fired after having been on
medical leave for an extended period.  Abbey sued HEMIC, Michael
Redman (HEMIC's Senior Vice President of Claims/Loss Prevention),
and Robert Dove (HEMIC's Chief Executive Officer), alleging,
among other things, that they had illegally discriminated against
her based on her sex and had violated public policy.  Before the
court is Defendants' motion for judgment on the pleadings.  This
court grants the motion except with respects to the parts of
Claim I (Title VII) and Claim II (chapter 378 of the Hawaii
Revised Statutes) that assert discrimination claims against
HEMIC.

II.        STANDARD OF REVIEW.

         Rule 12(c) provides:

         After the pleadings are closed--but early
         enough not to delay trial--a party may move
         for judgment on the pleadings.

Fed. R. Civ. P. 12(c).  The pleadings are closed once a complaint

and an answer have been filed, assuming that there is no

counterclaim or cross-claim.  Doe v. United States, 419 F.3d

1058, 1061 (9th Cir. 2005).

         Motions for judgment on the pleadings challenge the

legal sufficiency of the claims asserted in the complaint.

Judgment on the pleadings is properly granted when, accepting all

the allegations in the pleadings as true and construing them in

the light most favorable to the nonmoving party, the moving party

is entitled to judgment as a matter of law.  Fleming v. Pickard,

581 F.3d 922, 925 (9th Cir. 2009).  No issue of material fact may

be in dispute.  Id.

         When a Rule 12(c) motion is used to raise the defense

of failure to state a claim, the motion is subject to the same

test as a motion under Rule 12(b)(6).  Dworkin v. Hustler

Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989) ("The

principal difference between motions filed pursuant to Rule 12(b)

and Rule 12(c) is the time of filing.  Because the motions are

functionally identical, the same standard of review applicable to

a Rule 12(b) motion applies to its Rule 12(c) analog.");

McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988) (noting that a motion for judgment on the pleadings that raises the defense of failure to state a claim faces the same test as a motion under Rule 12(b)(6)).

To withstand a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1940 (2009). Although the court must accept all well-pleaded factual allegations as true, "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Nor must the court "accept as true a legal conclusion couched as a factual allegation." Id. (quoting Twombly, 550 U.S. at 555).

III.     BACKGROUND FACTS.

On this motion, this court accepts as true what are properly presented as factual allegations in the First Amended Complaint. Abbey has been employed by HEMIC since 2002, eventually rising to the position of Claims Manager. First Amend. Compl. ¶ 9. She alleges that, beginning in 2005, Redman, the Vice President of Claims/Loss Prevention, acted in an

intimidating manner because she had respectfully disagreed with some of his decisions. Id. ¶ 10. He allegedly made it a practice to treat female employees differently from male employees. Id. Abbey says that many employees, including Abbey herself, complained about Redman's conduct to the Human Resources Vice President. Id. ¶ 12. The Human Resources Vice President allegedly failed to take any action, instead referring to Redman paternalistically as being Abbey's "fadda." Id.

After a time, Abbey's health allegedly began to deteriorate. Id. ¶ 15. On November 30, 2007, Abbey went on medical leave. Id. A month later, she was diagnosed as disabled. Id. ¶ 16. While she was on medical leave, HEMIC filed a worker's compensation claim on her behalf without telling her. Id. ¶ 17. In December 2007, HEMIC advertised for a Corporate Claims Officer, a position with the same duties as Abbey's. Id. ¶ 19.

Abbey says she told HEMIC that she expected to return to work in April 2008. Id. ¶ 16. HEMIC told her in March 2008 that, as she had not notified HEMIC of her return date, HEMIC had no option but to fire her. Answer ¶ 7; First Amend. Compl. ¶ 20. According to Abbey, a male managerial employee who had been on medical leave for six months was not fired. Id. ¶ 22. Abbey says that, after she was fired, her position was filled by a "less qualified male employee." Id. ¶ 23.

4

Abbey filed a charge with the Equal Employment Opportunity Commission in April 2008.  Id. ¶ 27.  The EEOC issued her a Right-to-Sue letter on March 30, 2009.  Id. ¶ 31.

Abbey sued HEMIC in state court in June 2009, then filed a First Amended Complaint in October 2009.  Two weeks later, HEMIC removed the action to this court, then filed its answer.  Abbey asserts eight claims in her First Amended Complaint: a Title VII violation, a violation of section 378-2 of Hawaii Revised Statutes, a violation of Section 378-32 of Hawaii Revised Statutes,[1] a termination in violation of public policy, a failure to pay worker's compensation benefits, malicious prosecution, abuse of process, and intentional infliction of emotional distress.

HEMIC moves for judgment on the pleadings, alleging that Abbey's claims fail.

IV.     ANALYSIS.

        A.      Abbey Sufficiently Pleads Discrimination
                Claims Under Title VII and Section 378-2
                Against HEMIC, But Sufficiently Pleads no
                Title VII or Section 378-2 Claims against
                Dove or Redman.

Abbey alleges in Claim I that Defendants violated Title VII, and in Claim II that Defendants violated section 378-2 of Hawaii Revised Statutes.

_____

[1]At the hearing on this motion, Abbey withdrew this claim. The court does not address it here.

To the extent Abbey asserts discrimination claims under Title VII and section 378-2 against HEMIC, Abbey's claims are barely sufficient.

A plaintiff asserting a Title VII discrimination claim must show that (1) she belongs to a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008). Under Hawaii law, a plaintiff must show similar elements. Furukawa v. Honolulu Zoological Soc'y, 85 Haw. 7, 12-14, 936 P.2d 642, 648-50 (1997).

As a woman, Abbey is a member of a protected class, and thus, for pleading purposes, satisfies the first element. See Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1123 (9th Cir. 2009). With respect to the second element, Abbey alleges that she was qualified for her position, as she had worked for HEMIC for years and rose to the position of Claims Manager. First Amend. Compl. ¶ 8. Abbey sufficiently pleads the third element by alleging that she was subject to an adverse employment action, in the form of being fired in March 2008. Id. ¶ 20. Abbey also sufficiently pleads the fourth element with her allegation that at least one male employee who, like her, was in a managerial position, was not fired despite having been on

medical leave for six months.  Id. ¶ 22; see Furukawa, 85 Haw. at 14, 936 P.2d at 650.

While recognizing the sufficiency of Abbey's sex discrimination claims, this court does not find sufficient any allegations intended to support other theories under Title VII or section 378-2.  Thus, for example, Abbey does not sufficiently allege retaliation under Title VII or section 378-2.

To make out a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her activity and the adverse employment action.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065 (9th Cir. 2003).  Under Hawaii law, a plaintiff must establish three similar elements.  A plaintiff must show that first, he or she either opposed any practice forbidden by Hawaii law, or filed a complaint, testified, or assisted in any proceeding respecting a prohibited discriminatory practice; second, that the plaintiff's employer discriminated against the plaintiff; and third, that there is a causal link between the protected activity and the adverse action.  Schefke v. Reliable Collection Agency, Ltd., 96 Haw. 408, 425-26, 32 P.3d 52, 69-70 (2001).

With respect to the first element, Abbey alleges that she complained about Redman's behavior to the Human Resources

Vice President.  First Amend. Compl. ¶ 12.  This allegation, construed liberally by this court, is a sufficient assertion that Abbey engaged in a protected activity.  Complaints to a supervisor about unlawful employment actions constitute protected activity.  See Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000) (noting that the plaintiff's informal complaints to her supervisor about alleged sexist behavior constituted protected activity); Knox v. City of Portland, 543 F. Supp. 2d 1238, 1248 (D. Or. 2008) ("Informal complaints to a supervisor constitute protected activity in a retaliation claim" because the complaints essentially oppose an unlawful employment practice).  Although it is not at all clear that Abbey complained about Redman's sexist behavior or any discriminatory practice, construing the allegation and all inferences in the light most favorable to Abbey, the court concludes that Abbey has pled that she engaged in protected activity.

For the second element, Abbey alleges that she was fired from her job.  That is clearly an adverse employment action.

However, with respect to the third element, Abbey does not allege that she was fired because she complained about Redman's sexist behavior.  Indeed, she does not allege any causal connection between her complaint and her firing.

At the hearing on this motion, Abbey pointed to her allegation that Defendants are "fully aware of the basis of the lawsuit in that they were parties to and participated in the investigation conducted by the U.S. Equal [Employment] Opportunity Commission" as support for this claim.  Id. ¶ 30. Under this reasoning, a lawsuit could be commenced by the filing of a document containing only the title "Complaint."  Rule 8 of the Federal Rules of Civil Procedure clearly requires more.  A lawsuit might be based on only some of the claims in an EEOC charge.  Participation in an EEOC investigation does not deprive a defendant of the right to a sufficient statement of a plaintiff's claims.

Just as Counts I and II do not sufficiently allege retaliation, they do not sufficiently allege a hostile work environment.  A plaintiff asserting a sexually hostile work environment must show that (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir. 1995) (quoting Ellison v. Brady, 924 F.2d 872, 875-76 (9th Cir. 1991)).  "The working environment must both subjectively and objectively be perceived as abusive."  Craig v. M&O Agencies, Inc., 496 F. 3d 1047 (9th

9

Cir. 2007) (internal quotations omitted).  Objective hostility is determined by examining the totality of the circumstances, including the frequency of the alleged discriminatory conduct, its severity, and whether it unreasonably interfered with an employee's work performance.  Id.; see also Surrell v. California Water Serv. Co., 518 F.3d 1097, 1109 (9th Cir. 2008).  Mere isolated incidents do not create a hostile work environment; the hostility must be serious and pervasive.  Craig, 496 F.3d at 1056.

> Under Hawaii law, a plaintiff must show that:
>
> (1) he or she was subjected to sexual advances, requests for sexual favors, or other verbal or physical conduct or visual forms of harassment of a sexual nature; (2) the conduct was unwelcome; (3) the conduct was severe or pervasive; (4) the conduct had the purpose or effect of either: (a) unreasonably interfering with the claimant's work performance, or (b) creating an intimidating, hostile, or offensive work environment; (5) the claimant actually perceived the conduct as having such purpose or effect; and (6) the claimant's perception was objectively reasonable to a person of the claimant's gender in the same position as the claimant.

Nelson v. Univ. of Hawaii, 97 Haw. 376, 390, 38 P.3d 95, 109 (2001).  While the court is not saying that the above elements must all be expressly alleged, a plaintiff claiming a hostile work environment must provide factual allegations that make the bases of such a claim clear.

Abbey's allegations relating to a hostile work environment are thin and vague.  She alleges:

> Since 2005, Plaintiff was subjected to a hostile work environment created by the Senior Vice President of Claims/Loss Prevention, Defendant Redman and others. Defendant Redman's style of management, especially if an employee respectfully disagrees with his decisions, is based on fear and intimidation, especially toward female employees.

First Amend. Compl. ¶ 10.  The only specific instance Abbey identifies is a simple alleged comment by a Human Resources Vice President that Redman was Abbey's "fadda."  Without more factual detail, Abbey does not state a hostile work environment claim.

To the extent Abbey asserts Title VII claims against individuals Redman and Dove, those claims are dismissed.  As Abbey herself recognizes, see Opposition at 14, civil liability under Title VII is limited to employers and does not extend to individuals.  Miller v. Maxwell's Int'l, Inc., 991 F.2d 583, 587 (9th Cir. 1993); Lum v. Kauai County Council, 2007 WL 3408003, at *2 (D. Haw. 2007).  To the extent Abbey asserts section 378-2(1) and 378-2(2) claims against Redman and Dove, this court also dismisses these claims.  There is no individual liability under these sections.  Lum v. Kauai County Council, 2009 WL 4912393, at *1 (9th Cir. 2009)(there is no individual liability under section 378-2(1)(A) and 378-2(2)) (affirming Lum, 2007 WL 3408003, at *8).  While there is individual liability under section 378-2(3),

11

the First Amended Complaint does not include factual allegations supporting claims against Redman and Dove under that provision. Section 378-2(3) prohibits the aiding and abetting of prohibited discrimination.  In paragraph 14 of the First Amended Complaint, Abbey says that Redman and Dove are both "sexist towards females," but nowhere does Abbey say Redman or Dove aided and abetted each other or anyone else.  Thus, Redman and Dove could have been independently sexist under Abbey's allegations.  The allegations do not support claims against individual employees.

>   B.        Claim IV (Wrongful Termination in Violation
>             of Public Policy) Is Insufficiently Pled.

In Claim IV, Abbey alleges Defendants wrongfully terminated her in violation of public policy.  First Amend. Compl. ¶¶ 42-44.  Opposing dismissal, Abbey says that the public policy that was violated is the public policy "surrounding the creation of the worker's compensation system."  Opposition at 19. She points to many exhibits allegedly showing that she was retaliated against because she opposed HEMIC's alleged unethical business practices.  The claim is entirely conclusory and does not properly state what specific public policy was violated.

First, on a motion for judgment on the pleadings, a court looks only at the pleadings.  This court does not consider the evidence Abbey submits.  See SCD RMA, LLC v. Farsighted Enters., Inc., 591 F. Supp. 2d 1141, 1144-45 (D. Haw. 2008).

Second, Abbey does not clearly identify what public

policy was violated.  For this reason alone, her claim fails.

An employer may be liable in tort when its discharge of an at-will employee violates a clear mandate of public policy. Parnar v. Americana Hotels, Inc., 65 Haw. 370, 379, 652 P.2d 625, 631 (1982).  The Hawaii Supreme Court explained:

> In determining whether a clear mandate of public policy is violated, courts should inquire whether the employer's conduct contravenes the letter or purpose of a constitutional, statutory, or regulatory provision or scheme.  Prior judicial decisions may also establish the relevant public policy.  However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.  Of course, the plaintiff alleging a retaliatory discharge bears the burden of proving that the discharge violates a clear mandate of public policy.

Parnar, 65 Haw. at 379, 652 P.2d at 631.  Because of the "somewhat vague meaning of the term 'public policy,'" a claim under Parnar further requires a violation of a "clearly defined policy."  Id. at 379, 652 P.2d at 630-31; see also Takaki v. Allied Machinery Corp., 87 Haw. 57, 63, 951 P.2d 507, 513 (Haw. Ct. App. 1998) (holding that Parnar only applies when "clear public policy is involved") (internal citations omitted).

Thus, a plaintiff must specifically allege what public policy is violated.  Abbey does not do this.

Additionally, the Hawaii Supreme Court has noted that Parnar is intended to apply narrowly:

> If, however, the statutory or regulatory
> provisions which evidence the public policy
> themselves provide a remedy for the wrongful
> discharge, provision of a further remedy
> under the public policy exception is
> unnecessary.  If the legislature has
> considered the effect of wrongful discharge
> on the policies which they are promoting,
> provision by the courts of a further remedy
> goes beyond what the legislature itself
> thought was necessary to effectuate that
> public policy.

Ross v. Stouffer Hotel Co., Ltd., Inc., 76 Haw. 454, 464, 879

P.2d 1037, 1047 (1994) (quoting Lapinad v. Pacific Oldsmobile-

GMC, Inc., 679 F. Supp. 991 (D. Haw. 1988)).  Unless Abbey

identifies the public policy that was allegedly violated, this

claim cannot proceed.

        C.        Claim V (Insurance Bad Faith) Is
                Insufficiently Pled.

Abbey alleges that Defendants are liable for "insurance

bad faith" in connection with failing to pay her worker's

compensation benefits.  First Amend. Compl. ¶¶ 45-47.  Abbey

appears to allege that Defendants are liable in tort because they

failed to compensate her for loss that was allegedly covered by

HEMIC's worker's compensation policy.  This claim is

insufficiently pled, as Abbey does not even allege that any

Defendant is her worker's compensation insurer, or describe the

alleged bad faith.

The Hawaii Supreme Court has stated:

> [T]here is a legal duty, implied in a first-
> and third-party insurance contract, that the

> insurer must act in good faith in dealing
> with its insured, and a breach of that duty
> of good faith gives rise to an independent
> tort cause of action.

Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 132, 920 P.2d

334, 346 (1996).

Abbey does not allege that HEMIC, Redman, or Dove acted

as an insurer that could be liable for bad faith with respect to

insurance benefits.  It appears that HEMIC was both employer and

insurer, but the First Amended Complaint contains no allegations

about the latter capacity.  To the extent HEMIC is sued as

Abbey's employer, Abbey does not indicate how it is that she may

sue HEMIC directly in this court for worker's compensation

benefits.  See Haw. Rev. Stat. § 386-5.

Even if Abbey can pursue HEMIC in court, there is no

sufficient allegation that HEMIC so unreasonably delayed the

payment of benefits that it acted in bad faith.  See Best Place,

82 Haw. at 133, 920 P.2d at 347.  At most, Abbey asserts that

HEMIC appealed a DLIR decision holding that HEMIC had to pay

worker's compensation benefits.  Appealing a DLIR decision is

not, without more, a bad-faith delay in payment.

D.        Claim VI (Malicious Prosecution) Is
          Insufficiently Pled.

Abbey alleges that "the above acts by Defendants with

respect to [Plaintiff] in the workers' compensation claim

constituted a malicious prosecution in that it was initiated with

malice and without probable cause and was resolved in Plaintiff's favor at the DCD level." First Amend. Compl. ¶ 49. At the hearing on this motion, Abbey conceded that this claim should be dismissed.

Malicious prosecution has three elements: "(1) the prior proceedings must have been terminated in the plaintiff's favor; (2) the prior proceedings must have been initiated without probable cause; and (3) the prior proceedings must have been initiated with malice." Wong v. Cayetano, 111 Haw. 462, 478, 143 P.3d 1, 18 (2006).

With respect to the first element, termination "must be in such a manner that it cannot be revived." Id. (internal quotations omitted). Abbey says that Defendants wrongfully challenged her entitlement to her worker's compensation benefits. It is not at all clear that Defendants' opposition to Abbey's worker's compensation claim can be deemed a "prosecution" by Defendants. Even if that is a "prosecution," the parties agree that the matter remains pending. Abbey obtained a favorable result, but HEMIC's appeal has not been concluded. Abbey therefore agrees that her malicious prosecution claim is, at best, premature.

E.    Claim VII (Abuse of Process) Is Insufficiently Pled.

In Claim VII, Abbey alleges that Defendants had an ulterior purpose and willfully used the legal process. First

16

Amend. Compl. ¶¶ 51-53.  Defendants say this claim fails, as Abbey identifies no process that was abused.  This court agrees.

An abuse of process claim has two elements: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." Young v. Allstate Ins. Co., 119 Haw. 403, 412, 198 P.3d 666, 675 (2008).

It is unclear what "process" Defendants allegedly abused.  Abbey may be alleging that HEMIC's filing of a worker's compensation claim on her behalf constituted an abuse of process. However, process is defined as the "entire range of procedures incident to litigation." Id. at 412; 198 P.3d at 675.  It is wholly unclear that the filing or handling of a worker's compensation claim is a procedure incident to litigation.

Even if the worker's compensation proceedings can be considered process, Abbey has not provided any factual description of an ulterior purpose or of wilfulness.  Hawaii law requires HEMIC to report any alleged work injury to the Director of the DLIR within seven days after learning of the injury.  Haw. Rev. Stat. § 386-95.  The Director then investigates the injury. Haw. Rev. Stat. § 386-71.  It is hard to see how the alleged actions by Defendants could satisfy the second element of an abuse of process.

F.          Claim VIII (Intentional Infliction of
            <u>Emotional Distress) Is Insufficiently Pled.</u>

In Claim VIII, Abbey alleges that "Defendants' conduct described above was intentional or reckless" and "outrageous," and that she suffered "physical injury" and "intentional infliction of severe emotional distress" as a result.  First Amend. Compl. ¶¶ 54-59.

To state a claim for intentional infliction of emotional distress, a plaintiff must show: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  <u>Hac v. Univ. of Hawaii</u>, 102 Haw. 92, 106-09, 73 P.3d 46, 60-61 (2003).  Severe emotional distress is defined as "mental suffering, mental anguish, mental or nervous shock[,] . . . includ[ing] all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea."  <u>Id.</u> at 106, 73 P.3d at 60 (quoting Restatement (Second) of Torts § 46).

All Abbey does is list the elements of an IIED claim.  Under <u>Twombly</u> and <u>Iqbal</u>, this is insufficient.  Abbey must provide at least some factual basis for this claim.

G.          If Abbey Wants Leave To Amend The
            Complaint, She Must File A Proper
            <u>Motion For Leave To Do So.</u>

Abbey asks for leave to further amend her complaint if

18

this court is dismissing claims.  This request, however, is not accompanied by a proposed Second Amended Complaint.  This court has previously stated:

> To obtain leave to amend, the party's motion should attach a copy of the proposed amendment or new pleading.  Failure to attach the proposed amendment is not necessarily fatal, but may result in denial of leave to amend on the grounds that the court cannot evaluate the propriety of granting leave unless the court is presented with the substance of the proposed amendment.

Won v. Dias, 2008 WL 113661, *3 (D. Haw. Jan. 11, 2008) (citing Local Rule 10.3; 3 James Wm. Moore et al., Moore's Federal Practice § 15.17[1] (3d ed. 2007)).

If Abbey wants to file a Second Amended Complaint, she should file a proper motion seeking leave to do so, not just oppose the present motion with an unsupported request.  In stating this, this court in no way suggests that leave should be granted.  The court leaves that determination to the Magistrate Judge.

V.      CONCLUSION.

This court grants the motion for judgment on the pleadings with respect to claims against Redman and Dove in Counts I and II.  The court further dismisses Claims III to VIII in their entirety.  This leaves for further adjudication only claims against HEMIC in Counts I and II.

19

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 15, 2010



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Abbey v. Hawaii Employers Mutual Insurance Company, et al; ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS.