```
              IN THE UNITED STATES DISTRICT COURT

                   FOR THE DISTRICT OF HAWAII

ANASTASIA VICTORINA            )   CIVIL NO. 09-000545 SOM/BMK
LEHUANANI ABBEY,               )
                               )   ORDER DENYING DEFENDANTS'
         Plaintiff,            )   MOTION TO DISMISS BASED ON
                               )   UNTIMELINESS AND MOTION TO
     vs.                       )   DISMISS BASED ON FAILURE TO
                               )   PLEAD FACTS TO MAKE
HAWAII EMPLOYERS MUTUAL        )   PLAINTIFF'S CLAIMS PLAUSIBLE
INSURANCE COMPANY (HEMIC),     )
MICHAEL REDMAN, AND            )
ROBERT DOVE,                   )
                               )
         Defendants.           )
_____)
```

ORDER DENYING DEFENDANTS' MOTION TO DISMISS
BASED ON UNTIMELINESS AND MOTION TO DISMISS BASED ON
FAILURE TO PLEAD FACTS TO MAKE PLAINTIFF'S CLAIMS PLAUSIBLE

I.      INTRODUCTION.

Defendants Hawaii Employers Mutual Insurance Company ("HEMIC"), Michael Redman, and Robert Dove move to dismiss Plaintiff Anastasia Victorina Lehuanani Abbey's Second Amended Complaint on the grounds of untimeliness and insufficiently pled facts. Abbey, who worked for HEMIC for about six years, was fired after having been on medical leave for an extended period. Abbey alleges that she was intentionally forced out of her position at HEMIC because she was a female employee who questioned the authority of her male supervisors, Redman and Dove, and opposed the Brigham Quality Review Project. Second Amend. Compl. ¶ 160, ECF No. 46. This court previously granted in part Defendants' motion for judgment on the pleadings and dismissed Abbey's First Amended Complaint, except for her

discrimination claim under Title VII and section 378-2 of the Hawaii Revised Statutes. This court now denies Defendants' motion to dismiss based on untimeliness and failure to state a claim.

II.     BACKGROUND FACTS.

On this motion, this court accepts as true what are properly presented as factual allegations in the Second Amended Complaint.

Abbey has been employed by HEMIC since 2002, eventually rising to the position of Claims Manager. Second Amend. Compl. ¶ 10. She alleges that, beginning in 2005, Redman, the Vice President of Claims/Loss Prevention, acted in an intimidating manner because she had respectfully disagreed with some of his decisions. Id. ¶ 17. He allegedly made it a practice to treat female employees differently from male employees. Id. Abbey says that many employees, including herself, complained about Redman's conduct to the Human Resources Vice President. Id. ¶ 38. The Human Resources Vice President allegedly failed to take any action, instead referring to Redman paternalistically as Abbey's "fadda." Id. Abbey also voiced concern about the Brigham Quality Review Project, an independent company review program responsible for checking HEMIC's Independent Medical Examiner ("IME") reports for possible adjustments. Id. ¶¶ 70, 80.

After a time, Abbey's health allegedly began to deteriorate.  Id. ¶ 88.  On November 30, 2007, Abbey went on medical leave.  Id. ¶ 90.  A month later, she was diagnosed as disabled.  Id.  While she was on medical leave, HEMIC filed a worker's compensation claim on her behalf without telling her.  Id. ¶ 95.  In December 2007, HEMIC advertised for a Corporate Claims Officer, a position with the same duties as Abbey's.  Id. ¶ 103.

HEMIC told Abbey in March 2008 that, as she had not notified HEMIC of her return date, HEMIC had no option but to fire her.  Id. ¶ 125.  According to Abbey, a male managerial employee who had been on medical leave for six months was not fired.  Id. ¶¶ 127-31.  Abbey says that, after she was fired, her position was filled by a "less qualified male employee."  Id. ¶ 133.

In April 2008, Abbey filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging, among other things, sex discrimination and retaliation.  See ECF No. 89-5.  The EEOC issued her a Right-to-Sue letter on March 30, 2009.  Second Amend. Compl. ¶ 165.

Abbey sued HEMIC in state court in June 2009, then filed a First Amended Complaint in October 2009.  Two weeks later, HEMIC removed the action to this court, then filed its answer.  This court partially granted Defendants' motion for

judgment on the pleadings and allowed Abbey to amend her Complaint.  Abbey states six claims in her Second Amended Complaint: a Title VII violation, a violation of section 378-2, a termination in violation of public policy, insurance bad faith, abuse of process, and intentional infliction of emotional distress.  Defendants move to dismiss based on untimeliness and the failure to plead facts that state a claim that is plausible on its face.

III.     STANDARD OF REVIEW.

Under Rule 12(b)(6), review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).

A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when "the running of the statute is apparent on the face of the complaint."  Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir. 2006).  A complaint cannot be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  Conley v. Gibson, 335 U.S. 41 (1957); Pesnell v. Arsenault, 543 F.3d 1038, 1042 (9th Cir. 2008).  A motion to dismiss based only on the running of the statute of limitations period may be granted "if the assertions of the complaint, read with liberality, would

not permit the plaintiff to prove that the statute was tolled." Supermail Cargo, Inc. v. United States, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (internal quotations omitted).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

IV.     ANALYSIS.

    A.     HEMIC Does Not Show That Abbey's Claims Should Be Dismissed as Untimely.

HEMIC, Redman, and Dove (collectively, "Defendants") move to dismiss Counts I, II, and III of Abbey's Second Amended Complaint on the ground of untimeliness.  Defendants allege that Abbey was required to file the discrimination claims in Counts I and II within 90 days of her right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1).  Abbey's right-to-sue letter was dated March 30, 2009, and Abbey filed her Second Amended Complaint on June 11, 2009.  Second Amend. Compl. ¶ 165.  Defendants also allege that Abbey was required to file her wrongful discharge claim in Count III within two years after it accrued.  Abbey was allegedly discharged by HEMIC on March 21, 2008.  Id. ¶ 125.  She filed her original Complaint in June 2009 but did not file her Second Amended Complaint until June 11, 2010.  Defendants argue that the claims in Counts I, II, and III of the Second Amended Complaint do not relate back to the First Amended Complaint or the original pro se Complaint because the claims do not arise out of the same transaction or occurrence as the prior pleadings, and because Defendants had no earlier reason to actually or constructively know that they would be sued on the present grounds.

Abbey timely filed the discrimination and wrongful discharge claims in her original Complaint.  HEMIC does not meet its burden of showing that the claims in her Second Amended Complaint are so distinct from the original Complaint that they fail to relate back.  Abbey filed her original Complaint on June 28, 2009, within 90 days of her right-to-sue letter from the EEOC dated March 30, 2009, and within two years after the alleged wrongful discharge on March 21, 2008.  ECF No. 52, Exh. A.  The claims in Count I, II, and III at least arguably relate back to the original Complaint and the First Amended Complaint, as they arise out of the same conduct, transaction, or occurrence set out in the prior pleadings.

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides:  "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading . . . ."  Fed. R. Civ. Pro 15(c)(1)(B).  Claims arise out of the same conduct, transaction, or occurrence if they "share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim.  See Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir. 2008).

Counts I and II of the First Amended Complaint and the Second Amended Complaint are the same.  In both complaints, Count

I alleges a Title VII violation of the Civil Rights Act of 1964 and Count II alleges a violation of Hawaii Revised Statute § 378-2.  The original Complaint states that "defendants' termination of plaintiff's employment was a pretext by defendants in retaliation for Anastasia Victorina Lehuanani Abbey's exercise of rights protected by Constitution, laws, and public policy of the State of Hawaii."  ECF No. 52, Exh. A.  Moreover, Abbey's complaint to the EEOC alleged sex discrimination, disability discrimination, and retaliation.  Pl.'s Opp. Defs'. Mot. J. Pleadings, ECF No. 14, Exh. A.

Count III of the Second Amended Complaint and Count IV of the First Amended Complaint both allege a violation of public policy.  Count I of the original Complaint alleged "Termination Against Public Policy."  Id.

While the original Complaint, filed by Abbey when she was proceeding pro se, is not a model of clarity, on HEMIC's motion to dismiss based on untimeliness, HEMIC has the burden of persuading the court that dismissal is warranted.  HEMIC does not show that Abbey's original Complaint was so vague that HEMIC, which had notice of the EEOC proceeding, was devoid of notice that, for example, sex discrimination was at issue, despite the absence of those specific words from the original Complaint. Notably, the caption in the original Complaint listed Defendants as "Hawaii Employers' Mutual Insurance Company, (HEMIC) and their

agents, servants, and/or employees of the above." ECF No. 52, Exh. A.

>     B.     Abbey Alleges Sufficient Facts to State a <u>Plausible Claim.</u>
>
>>          1.     Count I: Title VII of the Civil <u>Rights Acts of 1964.</u>
>>
>>>               a.     <u>Gender-Based Discrimination and Hostile Work Environment.</u>

Count I of the Second Amended Complaint asserts sex discrimination in violation of Title VII. Sex discrimination claims come in more than one form. At the hearing on the present motions, Abbey said that she was asserting both disparate treatment and a hostile work environment.

With respect to the disparate treatment allegations, Abbey alleges that women were treated less favorably than men. Second Amend. Compl. ¶¶ 17, 127-31.

With respect to a gender-based hostile work environment claim, a plaintiff must ultimately show that (1) she was subjected to verbal or physical conduct of a harassing nature, (2) this conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See <u>Kortan v. Cal. Youth Auth.</u>, 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting <u>Pavon v. Swift Trans. Co. Inc.</u>, 192 F.3d 902, 908 (9th Cir. 1999)). Whether conduct was sufficiently severe or

pervasive to violate Title VII turns on "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Vasquez v. Cnty. of L.A., 349 F.3d 634, 642 (9th Cir. 2003). A Title VII gender-based hostile work environment action does not require that the harassing behavior be either of a sexual nature or motivated by sexual animus but can instead involve a pattern of abuse directed at women. E.E.O.C. v. Nat'l Educ. Ass'n, Ala., 422 F.3d 840, 845 (9th Cir. 2005). The main inquiry with a Title VII gender-based hostile work environment claim is whether a defendant's treatment of women differed sufficiently in quality and quantity from the treatment of men. E.E.O.C., 422 F.3d at 844.

Abbey sufficiently pleads the existence of a gender-based hostile work environment in which women were treated differently from men. When Redman took over the claims department at HEMIC, he allegedly told Abbey, "Be careful where you place your loyalty. Just remember who signs your paycheck now." Second Amend. Compl. ¶ 18. Abbey "understood this to mean that a man was in charge now, not a woman, and that things would be different from now on." Id. Abbey alleges that whenever she voiced objections to the Brigham Quality Review program, Dove and

Redman would repeatedly and consistently "yell, scream and swear profanities at Plaintiff in an effort to silence her." Id. ¶ 80. However, a male compensation adjuster at HEMIC was allegedly praised for engaging in an angry tirade at a claims staff meeting. This male employee allegedly yelled and screamed about HEMIC work procedures instituted by Dove and Redman. Id. ¶ 28. In response, Dove allegedly told the male employee that his comments were positive and that he should continue to express his opinions. Id. ¶ 30. Abbey alleges that if a female employee voiced disagreement, Dove and Redman would scream "you are to do as you are told, and follow instructions, you do not get paid to think, you get paid to do what I tell you to do." Id. ¶ 27. Any female manager who did not support Dove or Redman's plans or management style was allegedly demoted, forced to resign, or terminated, while male employees who voiced disagreement were not subject to such repercussions. Id. ¶¶ 45, 46. Moreover, Abbey alleges that only male employees at HEMIC were given special treatment and allowed to work from home or from other states. Id. ¶ 51.

### b. Retaliation.

Abbey also asserts a retaliation claim under Title VII. A prima facie case of retaliation under Title VII requires a plaintiff to show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her activity and the adverse employment

action.  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003).

In the Order Granting in Part Defendant's Motion for Judgment in the Pleadings, this court determined that Abbey had successfully pled the first two elements of her retaliation claim.  See ECF No. 18.  Abbey satisfied the first element because her complaints to a supervisor about unlawful employment actions constituted protected activity.  Id.  Abbey also satisfied the second element because her allegations that she was fired from her job concerned an adverse employment action.  Id.  However, Abbey's earlier retaliation claim was ultimately dismissed because she failed to sufficiently allege causation between her protected activity and an adverse employment action.  Id.

To show a causal link between activity protected under Title VII and retaliation by an employer, a plaintiff must at least raise an inference that the protected activity was the likely reason for adverse action and that the employer was aware the plaintiff had engaged in protected activity.  Cohen v. Fred Meyer, Inc., 686 F.2d 793, 798 (9th Cir. 1982).  Abbey now alleges that she was "eventually terminated from her employment in part because [she] would complain to her supervisors with respect to Defendant Redman's unacceptable behavior towards women."  Second Amend. Compl. ¶ 40.  Abbey bases her retaliation claim on Defendants' alleged yelling, gender discrimination, and

reaction to her objections to the Brigham Quality Review program. Opp. Defs. Mot. Summ. J. 17, ECF No. 101. Abbey's retaliation claim now provides allegations of a link between her termination and her complaints.

        2.        Count II: Hawaii Revised Statutes § 378-2.

            a.        Individual Liability.

In Count II, Abbey alleges that Redman and Dove are individually liable for having aided and abetted sex discrimination in violation of Hawaii Revised Statutes § 378-2(3). Section 378-2(3) allows claims against individuals who are not employers if the individuals "aid, incite, compel, or coerce" discrimination. Haw. Rev. Stat. § 378-2(3). "[A] person aids and abets an unlawful discriminatory practice of another if he knows that the practice constitutes a breach of the other's duty and if he provides substantial assistance or encouragement with respect to the practice." Lovell v. United Airlines, Inc., No. 09-146, 2009 WL 3172729, *4 (D. Haw. Oct. 2, 2009).

Abbey claims that Dove and Redman aided and abetted one another by choosing not to reprimand or discipline each other for sexist behavior. Second Amend. Compl. ¶ 43. Dove allegedly hired Redman because "DOVE felt that Defendant REDMAN would assist him to keep the female employees in their place." Id. ¶ 17. Redman allegedly suspended Abbey's recommended merit pay increase for six months because she was a woman. Id. ¶¶ 20-21. Even when the pay increase was finally approved, it was allegedly

for half or less of Abbey's usual increases from prior years. Id. ¶ 20. Abbey further alleges that Dove knew about and approved all of Redman's actions regarding Abbey's delayed merit pay increase. Id. Knowledge of inappropriate behavior and inaction may be evidence of wrongdoing or of an adoption of the offending conduct and its results. See Faragher v. City of Boca Raton, 524 U.S. 776, 789 (1998). Accordingly, the allegations in Abbey's Second Amended Complaint support individual liability claims against Redman and Dove.

### 3. Count III: Public Policy.

An employer may be liable in tort when its discharge of an at-will employee violates a clear mandate of public policy. Parnar v. Americana Hotels, Inc., 65 Haw. 370, 379, 652 P.2d 625, 631 (1982). In Count III, Abbey alleges that the public policy underlying HEMIC and worker's compensation is "to provide workers' compensation insurance coverage for employers at the lowest possible cost." Second Amend. Compl. ¶ 174. HEMIC allegedly violated this public policy by increasing costs to employers and insured clients of HEMIC, and decreasing settlements to claimants. Id. ¶ 176. Abbey and other employees allegedly expressed doubts about the benefits and use of the Brigham Quality Review Program that HEMIC was employing. Abbey contended to HEMIC that the program could not be used to settle cases. Id. ¶ 80. Abbey also objected to the Brigham Quality Review Program because it allegedly added costs to a workers'

compensation claim that would eventually be passed to the insured clients in the form of increased premiums for worker's compensation insurance. Abbey alleges that she was terminated because she voiced her opinion of the Brigham Quality Review Program. Id. ¶ 160. Putting aside the question of whether Abbey will be able to prove this claim, Abbey's allegations concerning her public policy claim are sufficient to avoid dismissal.

### 4. Count IV: Insurance Bad Faith.

The Hawaii Supreme Court has stated there is a legal duty in an insurance contract for an insurer to act in good faith in dealing with its insured. Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 132, 920 P.2d 334, 346 (1996). In Count IV, Abbey alleges that HEMIC acted in bad faith in "refusing, without proper cause, to provide worker's compensation benefits in a reasonably timely fashion" and "focus[ing] an investigation on ways to avoid paying a claim." Second Amend. Compl. ¶ 185. Abbey's bad faith claim incorporates HEMIC's handling of her worker's compensation claim up to the present litigation, all of which she claims was designed to "harass, vex and/or otherwise injure plaintiff". Id. ¶ 123. Abbey alleges that HEMIC filed a WC-1 Employer's Report of Industrial Injury on her behalf and retained Brandvold Ku to adjust her worker's compensation claim. Id. ¶¶ 94, 95. Abbey says Ku sent her a copy of the WC-1 report and requested a statement and authorization of access to her medical records to investigate her worker's compensation claim.

Id. ¶ 97.  HEMIC allegedly informed Abbey that it was unclear whether she was entitled to sick leave benefits because of her worker's compensation claim.  Id. ¶ 100.  The claim went to the Department of Labor and Industrial Relations ("DLIR"), which concluded that HEMIC had to pay worker's compensation benefits.  HEMIC appealed the decision, then withdrew the appeal.  Again without opining as to the merits of this claim, the court concludes that Abbey adequately alleges a breach of HEMIC's duty of good faith and fair dealing.  "[T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured.  An unreasonable delay in payment of benefits will warrant recovery for compensatory damages . . . ."  Best Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 133, 920 P.2d 334, 347 (1996).

###### 5. Count V: Abuse of Process.

An abuse of process claim has two elements: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding."  Young v. Allstate Ins. Co., 119 Haw. 403, 412, 198 P.3d 666, 675 (2008).  Abbey alleges that HEMIC had the ulterior purpose of discriminating against her because she is a woman and of intentionally injuring and punishing her for opposing the Brigham Quality Review Program.  Second Amend. Compl. ¶ 188.  She also claims that HEMIC used the worker's compensation claim process

for that ulterior purpose of harassing her, eventually terminating her.  Id. ¶¶ 124, 188.

Abbey alleges that she received a letter from the DLIR stating that HEMIC had denied liability with respect to her worker's compensation claim pending investigation.  Id. ¶ 109. The letter informed Abbey that she had to file certain forms within 30 days if she wanted action taken on her case.  Id.  In fact, Abbey says, she had two years to file a work-related stress claim.  Abbey's Complaint alleges that "HEMIC continued to harass and vex Plaintiff with respect to the worker's compensation claim for malicious reasons" by asking for statements, investigating claims, and trying to subpoena her health records.  Id. ¶¶ 113-18.  Furthermore, HEMIC allegedly did not file a WC-1 for a male managerial employee who was disabled from work following chest pains.  Id. ¶¶ 127-29.  This male employee was allegedly out of the office for at least six months, and HEMIC accommodated his situation by allowing him to work from home.  Id. ¶ 130.  Abbey's allegations regarding the worker's compensation claims process sufficiently state an abuse of process claim.

### 6. Count VI: Intentional Infliction of Emotional Distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must show: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  Hac v. Univ. of Hawaii, 102 Haw.

92, 106-09, 73 P.3d 46, 60-61 (2003).  In Count VI, Abbey alleges that Redman would scream, swear, and yell in the offices at least twice per month from the start of her employment with HEMIC.  Second Amend. Compl. ¶ 41.  Defendants' alleged mistreatment of Abbey, termination of Abbey, and handling of the worker's compensation process allegedly amounted to the intentional infliction of emotional distress.  Allegedly as a result of Dove and Redman's behavior, Abbey experienced sleepless nights, stomach pains, irregular periods, headaches, high blood pressure, and lightheadedness.  Id. ¶ 88.  Abbey claims that the stress of having to continue following a program that she felt was unethical "after exhausting all avenues to respectfully stop the Brigham Quality Review Program was overwhelming."  Id.  In November 2007, Abbey's physician, Dr. Kenneth Luke, declared her disabled such that she could not work at HEMIC and advised her that "the work environment at Defendant HEMIC is toxic."  Id. ¶ 90.  In July 2008, Abbey submitted to a Psychiatric Independent Medical Examination with Dr. George Bussey, pursuant to HEMIC's request.  Id. ¶ 136.  Dr. Bussey  stated that his "professional opinion is that Ms. Abbey probably could have returned to her previous occupation in a setting other than HEMIC . . . ."  Id. ¶ 143.  This opinion was confirmed by Dr. Luke.  Id. ¶ 144.  These allegations sufficiently support Abbey's intentional infliction of emotional distress claim.

V.     CONCLUSION.

     The court denies both the motion to dismiss based on untimeliness and the motion to dismiss based on a failure to state a claim that is plausible on its face.

     IT IS SO ORDERED.

     DATED: Honolulu, Hawaii, October 22, 2010



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              Chief United States District Judge

Abbey v. Hawaii Employers Mutual Insurance Company, et al., Civil No. 09-000545 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION TO DISMISS BASED ON UNTIMELINESS AND MOTION TO DISMISS BASED ON FAILURE TO PLEAD FACTS TO MAKE PLAINTIFF'S CLAIMS PLAUSIBLE.