IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ANASTASIA VICTORINA          )      CIVIL NO. 09-000545 SOM/BMK
LEHUANANI ABBEY,             )
                             )      ORDER PARTIALLY GRANTING AND
          Plaintiff,         )      PARTIALLY DENYING DEFENDANTS'
                             )      MOTION FOR SUMMARY JUDGMENT
     vs.                     )
                             )
HAWAII EMPLOYERS MUTUAL       )
INSURANCE COMPANY (HEMIC),    )
MICHAEL REDMAN, AND           )
ROBERT DOVE,                 )
                             )
          Defendants.        )
_____

ORDER PARTIALLY GRANTING AND PARTIALLY
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.        INTRODUCTION.

          Defendants Hawaii Employers Mutual Insurance Company

("HEMIC"), Michael Redman ("Redman"), and Robert Dove ("Dove")

move for summary judgment on Plaintiff Anastasia Victorina

Lehuanani Abbey's Second Amended Complaint.  Abbey, who worked

for HEMIC for about six years, was fired after having been on

medical leave for an extended period.  Abbey claims that she was

intentionally forced out of her position at HEMIC because she was

a female employee who questioned the authority of her male

supervisors, Dove and Redman, and opposed the Brigham Quality

Review Project.  This court previously denied Defendants' motion

to dismiss Abbey's Second Amended Complaint.  See ECF No. 130.

This court now grants the motion for summary judgment with

respect to Claim III (public policy), Claim IV (insurance bad

faith), and Claim V (abuse of process).  The court denies the
motion for summary judgment with respect to Claim I (Title VII),
Claim II (Hawaii Revised Statutes § 378-2), and Claim VI
(intentional infliction of emotional distress).

II.      BACKGROUND FACTS.

        HEMIC is in the business of providing worker's
compensation insurance.  See Declaration of Faye Bueno ¶ 2, ECF
No. 89-1 ("Bueno Decl.").  Abbey began working for HEMIC in 2002
and rose to the position of Claims Manager.  See Declaration of
Anastasia Victorina Lehuanani Abbey ¶ 5, ECF No. 150-1 ("Abbey
Decl.").  As Claims Manager, Abbey was responsible for the day-
to-day supervision of a unit of claim adjusters.  She reported to
Michael Redman, the Senior Vice President of Loss Prevention and
Claims Service.  See Bueno Decl. ¶ 3; Abbey Decl. ¶ 10.

        Abbey alleges that, in 2006, Redman began acting in an
intimidating manner toward her after she disagreed with some of
his decisions.  See Abbey Decl. ¶¶ 12, 23.  Redman allegedly made
it a practice to treat female employees differently from male
employees.  Id. ¶¶ 42-43.  Abbey says that she complained about
Redman's conduct to Faye Bueno, the Human Resources Vice
President.  Id. ¶ 36.  Bueno allegedly failed to take any action,
instead referring to Redman as acting as Abbey's "fadda"
("father").  Id.  Abbey also complained about the Brigham Quality
Review Project, an independent company review program, which

checked HEMIC's Independent Medical Examiner ("IME") reports for possible adjustments.  Id. ¶¶ 72, 79.

After a time, Abbey's health allegedly began to deteriorate.  Id. ¶ 90.  On November 30, 2007, Abbey went on medical leave, claiming work-related stress.  Id.  While Abbey was on medical leave, HEMIC filed a worker's compensation claim on her behalf without telling her.  Id. ¶ 100.  On December 15, 2007, HEMIC advertised for a Corporate Claims Officer, a position with the same duties as Abbey's.  See ECF No. 150, Ex. K.  On December 21, 2007, Abbey's name was removed from HEMIC's online directory, even though Abbey was only on leave.  See ECF No. 150, Ex. L.

HEMIC told Abbey in March 2008 that, as she had not notified HEMIC of her return date, HEMIC had no option but to fire her.  See ECF No. 89, Ex. M.  According to Abbey, a male managerial employee who had been on medical leave for a substantial period was not fired.  See Abbey Decl. ¶¶ 141-46.  Abbey says that, after she was fired, her position was filled by a "less qualified male employee."  Id. ¶ 147.

Abbey sued HEMIC in state court in June 2009, then filed a First Amended Complaint in October 2009.  Two weeks later, HEMIC removed the action to this court, then filed its answer.  This court partially granted Defendants' motion for judgment on the pleading, and allowed Abbey to amend her

complaint for a second time.  See ECF No. 18.  The court denied
Defendants' motion to dismiss Abbey's Second Amended Complaint,
and Defendants now bring a summary judgment motion, arguing that
Abbey's claims are untimely and that there are no triable issues.
See ECF No. 130.  Abbey asserts six claims in her Second Amended
Complaint: a Title VII violation, a violation of section 378-2 of
Hawaii Revised Statutes, a termination in violation of public
policy, insurance bad faith, abuse of process, and intentional
infliction of emotional distress.

III.     STANDARD OF REVIEW.

          Summary judgment shall be granted when "the pleadings,
the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material
fact and that the movant is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c).

          One of the principal purposes of summary judgment is to
identify and dispose of factually unsupported claims and
defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.
Ct. 2548, 91 L. Ed. 2d 265 (1986).  Accordingly, "[o]nly
admissible evidence may be considered in deciding a motion for
summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d
975, 988 (9th Cir. 2006).  Summary judgment must be granted
against a party that fails to demonstrate facts to establish what
will be an essential element at trial.  See Celotex, 477 U.S. at

4

323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

5

(1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor."  Miller, 454 F.3d at 988 (quotations and brackets omitted).

IV.     ANALYSIS.

> A.      The Court Denies the Motion To Strike
>         Materials Submitted by Plaintiff and Grants
>         the Motion To Seal Evidence.

The court denies Defendants' motion to strike materials submitted by Abbey in Opposition to their motion for summary judgment.  See ECF No. 156.  The court will give appropriate weight to only admissible evidence.

The Ninth Circuit has recognized a strong presumption of public access to judicial records applicable to documents attached to dispositive motions.  See Kamakana v. City & Cnty. of Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006).  There must be "compelling reasons" to justify the sealing of documents attached to dispositive motions.  Id. at 1180.  "That is, the party must 'articulate[ ] compelling reasons supported by specific factual findings,' that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process."  Id. (internal citations omitted).

The court grants the motion to strike and seals for now evidence of a nonparty's confidential medical records.  See ECF No. 161.  The confidential medical records are ordered sealed even though Defendants have still not complied with Local Rule 83.12.  See Order Regarding Pl. Ex Parte Motion 3, ECF No. 155.  The need to protect medical privacy qualifies as a "compelling reason" that overcomes the presumption of public access to judicial records.  See G. v. Hawaii, Civ. No. 08-00551, 2010 WL 2607483, at *1 (D. Haw. June 25, 2010); Lombardi v. TriWest Healthcare Alliance Corp., CV 08-02381, 2009 WL 1212170, at *1 (D. Ariz. May 4, 2009) (allowing defendant to file under seal exhibits containing "sensitive personal and medical information") (citing Kamakana, 447 F.3d at 1179)).  Whether the sealing should

be "permanent," as Defendants request, is not a matter this court
addresses now.  Events at trial may or may not require unsealing,
but the court will address that as it becomes necessary.

> B.        Defendants Do Not Show that Abbey's Claims in
>           the Second Amended Complaints Are Untimely.

Defendants' arguments on the timeliness of the filing
of the Complaint and the public policy claim, along with the
relation back arguments, have already been addressed by this
court.  See Order Den. Defs. Mot. Dismiss 6-9, ECF No. 130.
Defendants make no new arguments in their motion for summary
judgment.  Accordingly, the court rejects the untimeliness
arguments on the same grounds stated in its previous order.  See
id.

Defendants next argue that Abbey's claims of hostile
work environment and discrete discriminatory acts (except
termination) are time-barred because the acts complained of
occurred more than 300 days before Abbey filed her charge of
discrimination on April 30, 2008.  See Nat'l R.R. Passenger Corp.
v. Morgan, 536 U.S. 101, 113, 117-18 (2002); Lyons v. England,
307 F.3d 1092, 1105-07 (9th Cir. 2002); ECF No. 89, Ex. C.

In her declaration, Abbey states that "Defendant Redman
would scream, swear and yell in the HEMIC offices at females
(including myself) at least twice per month from the very
beginning of his employment with HEMIC."  See Abbey Decl. ¶ 39.
Abbey appears to be alleging a continuing violation, with acts

8

allegedly beginning before but continuing after August 4, 2007.
Susan Gante states in her Declaration that she would hear Redman
yelling at female coworkers in the office approximately twice a
month, but she does not specify any dates.  See Declaration of
Susan Gante ¶ 6, ECF No. 150-2.  At the hearing, Abbey pointed to
these sections of both declarations and asked the court to infer
that she was yelled at or discriminated against after August 4,
2007.  Viewing the facts in the light most favorably to Abbey,
the court agrees and assumes for purposes of the present motion
and that at least some of the acts Abbey complains of are timely
and occurred after August 4, 2007.

      C.       Claims In Issue.

           1.       Claim I: Violation of Title VII of
                    the Civil Rights Act of 1964.

                a.      Discrimination.

                    (1)     Prima Facie Sex
                          Discrimination.

HEMIC argues that Abbey does not establish a prima
facie sex discrimination claim.  This court is not persuaded.

To establish a prima facie case of disparate treatment
discrimination under Title VII, a plaintiff must show that (1)
she belongs to a protected class; (2) she was qualified for her
position; (3) she was subject to an adverse employment action;
and (4) similarly situated individuals outside her protected
class were treated more favorably.  See Davis v. Team Elec. Co.,

520 F.3d 1080, 1089 (9th Cir. 2008); see also Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1123 (9th Cir. 2009). The degree of proof required to establish a prima facie case for Title VII on summary judgment is minimal. Coghlan v. Am. Seafoods Co., LLC, 413 F.3d 1090, 1094 (9th Cir. 2005).

Defendants argue only that Abbey does not establish the fourth element of her prima facie case--that one or more other employees who were similarly situated to her were treated more favorably. Specifically, Defendants argue that Abbey has not shown that the five male coworkers identified in her Second Amended Complaint were similarly situated. See Def. Mot. Summ. J. 10, ECF No. 88-2.

A plaintiff must demonstrate that she is similarly situated to employees that receive more favorable treatment in all material respects. Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006). However, "a plaintiff is not obligated to show disparate treatment of an identically situated employee." McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001) (cited approvingly in Selig). Instead, "individuals are similarly situated when they have similar jobs and display similar conduct." Hawn v. Exec. Jet Mgmt. Inc., 615 F.3d 1151, 1160 (9th Cir. 2010); Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003) (finding employee not similarly situated if he

10

"did not engage in problematic conduct of comparable seriousness to that of [the plaintiff]").

Abbey has provided sufficient facts that she was similarly situated to one male employee, Joseph Benevides, referenced in her Second Amended Complaint.

At HEMIC, Abbey was a Claims Manager and supervised a unit of inside claim adjusters.  <u>See</u> Bueno Decl. ¶¶ 2-3.  Abbey handled and directed the third-party administration of all employee worker's compensation claims.  <u>See</u> Abbey Decl. ¶ 10. Abbey reported to Michael Redman, the Senior Vice President of Loss Prevention and Claim Services.  <u>See</u> Bueno Decl. ¶ 3.

Joseph Benevides was HEMIC's Director of Field Services, responsible for the overall management, policy, and direction of the Premium Audit, Collections, and Loss Prevention areas.  <u>See</u> Bueno Decl. ¶ 10.  Abbey claims that Benevides was a managerial employee like herself.  Benevides was allegedly disabled from work following chest pain he experienced on a return flight home from a work-related conference.  In March 2003, Benevides took 62 days of medical leave.  <u>See</u> ECF No. 89, Ex. N (Benevides's leave records).  Benevides returned to work on May 12, 2003, which was his designated return date.  <u>See</u> Bueno Decl. ¶ 11.  At his own request, Benevides was relieved of the duty of supervising collections and loss prevention.  <u>See</u> <u>id.</u> Benevides still had other supervisory responsibilities, so he appears to have been similarly situated to Abbey in that respect.

Nevertheless, his worker's compensation claim was allegedly not handled in the same fashion as Abbey's.  <u>See</u> Abbey Decl. ¶ 142. Abbey states that HEMIC never filed a WC-1 form for him, never subpoenaed his records, and never subjected him to a hearing or deposition on compensability.  <u>See</u> <u>id.</u> ¶¶ 142, 145.  Viewing all inferences in Abbey's favor, this court sees Benevides as similarly situated to Abbey on the present record.

The court does not reach the same result with respect to the four other HEMIC employees Abbey compares herself to.

Wallace "Shayne" Dobbins, at one time the Vice President of Underwriting, was reassigned to the position of Director of Information Services; he did not supervise anyone. <u>See</u> Bueno Decl. ¶ 13.  He asked to work remotely from Marietta, Georgia.  <u>See</u> <u>id.</u>  Abbey states that only male employees at HEMIC were given special treatment and allowed to work regularly from home or another state.  <u>See</u> Opp'n 11, ECF No. 149.  But nothing in the record suggests that Abbey herself ever asked for such an option, nor does she claim that her supervisory job could have been performed that way.  Overall, Abbey fails to demonstrate how her duties and responsibilities were comparable to Dobbins's such that she and he were similarly situated.

Carlton Chun is a male in-house attorney for HEMIC. Plaintiff alleges that Chun was never yelled at or disciplined for his continuous lack of response or follow up in emails, calls, and meetings.  <u>See</u> Abbey Decl. ¶ 58.  The record is not

sufficient to allow this court to conclude that Chun was similarly situated to Abbey.  He was an attorney for HEMIC, while Abbey was a Claims Manager who supervised claims adjusters.  It is not at all clear that Chun had the kind of supervisory duties Abbey had.

Farmborn "Gil" Guillermo was a Principal Claim Specialist who reported to a Claims Manager (other than Abbey) and did not supervise anyone.  See Bueno Decl. ¶ 15; ECF No. 89, Ex. O (description of Principal Claim Specialist).  Abbey argues that she and Guillermo were "similarly situated" because they both reported to Dove.  See Abbey Decl. ¶ 32.  However, an employee in a supervisory position is generally not deemed to be similarly situated to a nonsupervisory employee.  See Vasquez, 349 F.3d at 641-42 n.17.

Siu Chen was a male underwriter at HEMIC who committed suicide after experiencing work-related stress.  See Opp'n 14.  Abbey does not even claim that Chen engaged in conduct comparable to hers.  Moreover, the investigation of Chen's work injury claim necessarily differed from any action taken with respect to Abbey, given Chen's suicide.

Viewing the facts and construing them in a light most favorable to Abbey, the court is persuaded that Abbey has produced enough evidence to at least create an issue of fact regarding whether one male employee, Joseph Benevides, was similarly situated to her and treated more favorably.  See Chuang

13

v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1124 (9th
Cir. 2000) ("Under the McDonnell Douglas framework, '[t]he
requisite degree of proof necessary to establish a prima facie
case for Title VII . . . on summary judgment is minimal and does
not even need to rise to the level of a preponderance of the
evidence.' ") (alteration in original) (quotation omitted).

                                        (2)     Legitimate,
                                                Non-
                                                discriminatory
                                                Reason.

        If a plaintiff establishes a prima facie case, the
burden of production shifts to the employer to articulate some
legitimate, nondiscriminatory reason for the challenged action.
Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th
Cir. 2002) (quotations omitted).  "[T]he defendant must clearly
set forth, through the introduction of admissible evidence,
reasons for its actions which, if believed by the trier of fact,
would support a finding that unlawful discrimination was not the
cause of the employment action."  St. Mary's Honor Ctr. v. Hicks,
509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)
(quotations omitted).  This is merely a burden of production, not
proof, as the ultimate burden of persuasion resides with the
employee.  St. Mary's, 509 U.S. at 508, 113 S. Ct. 2742;
Villiarimo, 281 F.3d at 1062.  The burden is also minimal, as the
employer need only articulate, not prove, reasons for its
actions.  Bd. of Trs. of Keene State Coll. v. Sweeney, 439 U.S.
24, 25 & n.2, 99 S. Ct. 295, 58 L. Ed. 2d 216 (1978).  It need

not prove a nondiscriminatory intent.  Id. at 25 n.2, 99 S. Ct.

295.  And courts "only require that an employer honestly believed

its reason for its actions, even if its reason is foolish or

trivial or even baseless."  Villiarimo, 281 F.3d at 1063

(internal quotation marks omitted).

        Defendants argue that, even if Abbey makes out a prima

facie case of discrimination, HEMIC had a legitimate,

nondiscriminatory reason to terminate her.  They argue that Abbey

was terminated because she was absent from work for 111 days,

allowed her family leave to expire, did not obtain approval for

additional leave, and did not inform the company of her condition

or expected return date.  See Defs. Mot. Summ. J. 15, ECF No. 88.

Abbey was notified of these reasons for her termination by letter

on March 21, 2008.  See ECF No. 89, Ex. M.  The court agrees with

HEMIC that the stated reasons are legitimate, nondiscriminatory

reasons.  Accordingly, HEMIC satisfies its "minimal" burden of

articulating a legitimate reason for its action.

                              (3)        Pretext.

        HEMIC argues that Abbey has not established that its

legitimate reason for firing her was pretextual.  This court

finds a triable issue on this subject.

        If an employer meets its burden of production, the

burden then shifts to the employee to prove that the employer's

explanation was merely a pretext to conceal discriminatory

conduct.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93

S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Villiarimo, 281 F.3d at

1062.   An employee's burden at this step is to prove pretext by a

preponderance of the evidence.  Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d

105 (2000).  On a summary judgment motion relating to pretext, an

employee must "raise a genuine factual question whether, viewing

the evidence in the light most favorable to [the employee], [the

employer's] reasons are pretextual." Chuang v. Univ. of Cal.

Davis, Bd. of Trs., 225 F.3d 1115, 1126 (9th Cir. 2000).  An

employee may meet this burden by directly showing that the

employer was more likely motivated by discriminatory intent or by

indirectly showing that the employer's explanation is unworthy of

credence.  Reeves, 530 U.S. at 143, 120 S. Ct. 2097; Villiarimo,

281 F.3d at 1062.  "Although a plaintiff may rely on

circumstantial evidence to show pretext, such evidence must be

both specific and substantial." Villiarimo, 281 F.3d at 1062.

        Abbey argues that emails exchanged by Abbey, Redman,

and Dove in 2006 demonstrate that HEMIC's proffered reasons were

really a pretext for firing her because she did not give her male

supervisors enough respect.  See ECF No. 150, Ex. C.  Abbey had

requested that Redman review a claim and authorize settlement

above her authority.  See id.  Redman stated twice that he wanted

to discuss the matter further, but Abbey settled the claim

without talking to Redman.  See id.  Redman reminded Abbey of his

request that she discuss the matter with him first and told her

that he expected that to happen in the future.  See id.  Abbey
stated that she did not appreciate Redman's tone, and Redman
responded that he was more concerned that she understand his
message.  See id.  Dove then emailed Redman that Abbey "need[ed]
to support and respect" Redman.  See id.  He continued, "If she
has another leader, then she needs another address.  It's time
for a 'my way or the highway' conversation."  See id.  While this
email exchange does not on its own suggest gender discrimination,
Abbey combines this evidence with evidence of HEMIC's actions
after her last day of work on November 30, 2007.

On December 15, 2007, while Abbey was on medical leave
but months before HEMIC terminated her employment, HEMIC
advertised a position similar to Abbey's in the newspaper.  See
ECF No. 150, Ex. K.  HEMIC posted a position for a Corporate
Claim Officer whose responsibilities were to "oversee all of the
company's claim activities" and "to assist in the claim handling
process and . . . proper servicing and settlement of all claims."
See ECF No. 150, Ex. K.  Abbey says that male employees with
workers' compensation stress claims with HEMIC did not have their
positions advertised in the newspaper while they were on leave.
See Abbey Decl. ¶ 114.  As of December 21, 2007, Abbey's name had
been removed from the online staff directory, even though she was
only on leave.  See ECF No. 150, Ex. L.  Abbey claims that these
acts suggest that HEMIC had already decided to terminate her
under circumstances in which no man was terminated.

Although Abbey has far from the strongest evidence of pretext, she raises a genuine issue of fact as to whether HEMIC's proferred reasons for its actions were a pretext for sex discrimination.  In other words, while a reasonable jury might find that HEMIC asked Abbey to leave because she exceeded her FMLA leave, a reasonable jury might instead conclude, based on the combination of email exchanges and HEMIC's advertisement of a work position similar to Abbey's and removal of Abbey from the staff directory, that HEMIC's proferred reasons were a pretext for sex discrimination.

b.       Retaliation.

Similarly, the court finds a triable issue on Abbey's retaliation claim.

To make out a prima facie case of retaliation under Title VII, a plaintiff must show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her activity and the adverse employment action.  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065 (9th Cir. 2003).  To show a causal link between activity protected under Title VII and retaliation by an employer, a plaintiff must present evidence sufficient to raise an inference that the protected activity was the likely reason for adverse action and that the employer was aware that plaintiff had engaged in protected activity.  See id.

Abbey says her criticism of the Brigham Quality Review Project was protected, as she was allegedly complaining that the program violated statutory requirements.  The last time Abbey voiced her objection to the Brigham Review Program was the last day of her employment at HEMIC on November 30, 2007.  See Abbey Decl. ¶ 88.  Complaints to a supervisor about allegedly unlawful employment actions constitute protected activity.  See Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000) (noting that the plaintiff's informal complaints to her supervisor about alleged sexist behavior constituted protected activity).

Abbey claims that one adverse employment action taken against her was HEMIC's newspaper advertisement for a position similar to hers on December 15, 2007.  See ECF No. 150, Ex. K. Moreover, HEMIC removed Abbey's name from the online staff direction as of December 21, 2007.  See ECF No. 150, Ex. L. Abbey was officially terminated from HEMIC on March 21, 2008. See ECF No. 150, Ex. U.  Abbey says male employees who voiced similar criticisms were not treated the same.  Altogether, such actions qualify as adverse employment actions.

Temporal proximity between the protected activity and adverse employment action must be "very close" to make out a prima facie case of retaliation.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam) (citations omitted).  Abbey argues that only two weeks elapsed between when

Abbey complained about the Brigham Quality Review Project and when HEMIC took steps to replace her by advertising a position similar to hers.  This temporal proximity is enough to support a prima facie case of retaliation on the present record.

   If a plaintiff makes out a prima facie case, the burden shifts to the employer to present legitimate reasons for the adverse employment action.  <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 928 (9th Cir. 2000).  Once an employer carries this burden, a plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by an employer was pretext.  <u>Id.</u>  Only then does the case proceed beyond the summary judgment stage.  <u>Id.</u>  Abbey has made out a prima facie case for retaliation, HEMIC has presented a legitimate reason for termination, and, as noted earlier in the context of Abbey's sex discrimination claim, Abbey sets forth a genuine issue of material fact as to whether HEMIC's reason is true.  Accordingly, Abbey's retaliation claim survives a motion for summary judgment.

     c.   Sex-Based Hostile Work Environment.

   As Defendants did not move for summary judgment on this claim or address it at the hearing, that claim is not the subject of the present order.

     2.   Claim II: Violation of Hawaii Revised Statutes § 378-2.

   As Defendants did not address the claim brought under section 378-2 of Hawaii Revised Statutes against HEMIC, that

claim is not addressed here.

Nor do Defendants address the individual claims against Dove and Redman in their motion for summary judgment or reply. Section 378-2(3) allows claims against individuals who are not employers if the individuals "aid, incite, compel, or coerce" discrimination.  Haw. Rev. Stat. § 378-2(3).  "[A] person aids and abets an unlawful discriminatory practice of another if he knows that the practice constitutes a breach of the other's duty and if he provides substantial assistance or encouragement with respect to the practice."  Lovell v. United Airlines, Inc., Civ. No. 09-146, 2009 WL 3172729, *4 (D. Haw. Oct. 2, 2009).

At the hearing, Defendants referred to this court's earlier ruling that the section 378-2 claims against Redman and Dove withstood a motion to dismiss given allegations regarding Abbey's recommended merit pay increase.  See Order Den. Defs. Mot. Dismiss 13-14, ECF No. 130.  Redman had allegedly suspended Abbey's recommended merit pay increase for six months because she was a woman.  See Abbey Decl. ¶¶ 13-17.  Even when the pay increase was finally approved, it was allegedly for half or less of Abbey's usual increases from prior years.  Id. ¶ 15.  Dove allegedly knew about and approved all of Redman's actions regarding Abbey's delayed merit pay increase.  Id.  At the hearing, Defendants argued that because these allegations regarding aiding and abetting involved actions that occurred in 2004 and 2005, they were time-barred.  However, Defendants'

failure to articulate this argument in their moving papers robbed Abbey of a chance to address it.  Out of fairness to Abbey, this court does not rule on that matter here.

        3.         Claim III: Termination in Violation of Public Policy.

HEMIC argues that Abbey fails to demonstrate that the Brigham Quality Review Project violates a clearly mandated public policy.  Abbey states that she had serious reservations regarding the Brigham Quality Review Project, see Opp'n 26-27, but she does not establish a triable issue that the project was a clear violation of public policy.

An employer may be liable in tort when its discharge of an at-will employee violates a clear mandate of public policy. Parnar v. Americana Hotels, Inc., 65 Haw. 370, 379, 652 P.2d 625, 631 (1982) (holding that a violation of a clearly defined policy is necessary because of the vague meaning of the term public policy).

Abbey alleges that the public policy underlying HEMIC and worker's compensation is "to provide workers' compensation insurance coverage for employers at the lowest possible cost." Abbey Decl. ¶ 176.  Abbey asserts that the Brigham Quality Review Project violated public policy because the project increased costs to employers and insured clients of HEMIC, and decreased settlements to claimants.  See Abbey Decl. ¶ 178.  The project involved HEMIC's submission of IME impairment ratings for review by Brigham & Associates.  See Declaration of Robert Dove ¶¶ 3-7,

22

ECF No. 89-2 ("Dove Decl.").   While Abbey's complaints regarding the Brigham Quality Review Project were protected activity for Title VII purposes, the public policy on which Abbey bases Count III is not the policy of protecting purported whistleblowers but rather the policies "to restore the injured employee and to compensate the employee adequately."   Second Am. Compl. ¶ 175, ECF No. 46.   Abbey says she was fired "based on [the] violation of public policy" giving rise to the worker's compensation system and to the "creation of HEMIC."   Id. ¶¶ 175-78.   Therefore, to prevail on Count III as it is pled, Abbey must establish a violation of the policy or policies she identifies, rather than of any general policy to protect employees who speak out.

In other words, while an employee's complaint about allegedly unlawful employment actions is protected activity under Title VII, see Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 506 (9th Cir. 2000), on a Parnar claim, the employee bears the burden of proving that an allegedly unlawful employment action is a clear violation of the very public policy the employee relies on.   Abbey must establish on Count III not just that she complained, but that she was right.   Cf. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1068 (9th Cir. 2002) (finding employee's complaint filing was a protected activity but rejecting her Parnar claim).

The record indicates that HEMIC disagreed with Abbey about how to provide workers' compensation coverage, but there is

23

no evidence HEMIC violated public policy.[1]  A mere difference of opinion is not a public policy violation.  See Farmer v. Hickam Fed. Credit Union, 122 Haw. 201, 224 P.3d 455 (Haw. Ct. Appt. Feb. 2, 2010).  See also Parnar, 65 Haw. 370, 380 (Haw. 1982) ("[C]ourts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.").  In a related case, Abbey had testified that she opposed the Brigham Quality Review Project because she was confused about how it worked, and she felt that the impairment ratings should only be subject to review at the discretion of an adjuster, not on a blanket basis.  See ECF No. 89, Ex. R at 221:3-223:25.  Abbey presents no judicial or legislative pronouncement that HEMIC's sole purpose is to provide worker's compensation insurance at the lowest cost possible, or any evidence that HEMIC's actual purpose was not furthered by the

---

[1] In a separate arbitration involving another former HEMIC employee against HEMIC, the arbitrator, in a decision dated March 15, 2010, found that the Brigham project was a valid cost reduction measure implemented in a "eminently reasonable" manner. See Decision of Arbitrator 26, ECF No. 89, Ex. Q.  The project averaged a cost containment savings of $100,000.00 per year.  See id. at 25.  While the arbitrator stated that the rating reviews sometimes increased the impairment rating, no wrongful intent was found.  See id. at 25.  HEMIC attorneys did advise HEMIC that it faced potential risk for claims of bad faith if HEMIC withheld either the IME or the Brigham Review of that IME when they differed.  Id. at 25-26.  Dove agreed with the attorneys about the possible risk, and HEMIC therefore submits both claims when there is a disagreement.  Id.  The arbitrator also found that "adjustments were made" to "meet the concerns of adjusters, attorneys, and administrators at HEMIC."  Id. at 25.  The arbitrator's view is not, of course, binding on this court, but its analysis is consistent with the present discussion.

program.  The policies Abbey identifies ("to restore the injured

employee and to compensate the employee adequately," Second Am.

Compl. ¶ 175) are broad and allow for varied methods of being

met.  Perhaps aware of that, Abbey points to a purported public

policy in the HEMIC Employee Manual.  <u>See</u> Abbey Decl. ¶ 70; ECF

No. 150, Ex. E ("HEMIC Employee Handbook").  However, public

policy cannot be based on violation of an employee handbook.  <u>See</u>

<u>Farmer v. Hickam Fed. Credit Union</u>, No. 27868, 122 Haw. 201, 224

P.3d 455 (Haw. Ct. App. Feb 2, 2010).  Furthermore, the HEMIC

manual states that the company mission is broader than just

providing low cost workers' compensation insurance.  <u>See</u> HEMIC

Employee Handbook 3-4, ECF No. 150, Ex. E (identifying HEMIC's

five prong mission).  <u>See also</u> <u>Takaki v. Allied Machinery Corp.</u>,

87 Haw. 57, 63, 951 P.2d 507, 514 (Haw. Ct. App. 1998) (holding

that <u>Parnar</u> only applies when "clear public policy is involved")

(internal citations omitted).

        Abbey does not show that her opposition to the Brigham

Quality Review Project was anything more than a disagreement with

company management regarding an internal business decision.  She

does not present a triable issue as to any violation or

interference with a clearly mandated public policy.

                    4.        <u>Claim IV: Insurance Bad Faith.</u>

        HEMIC argues that there is no issue of material fact

regarding Abbey's insurance bad faith claim.  This court agrees.

The Hawaii Supreme Court has identified an insurer's duty to act in good faith in dealing with its insured.  <u>Best Place, Inc. v. Penn Am. Ins. Co.</u>, 82 Haw. 120, 132, 920 P.2d 334, 346 (1996).  An unreasonable delay in payment of benefits warrants recovery for compensatory damages.  <u>See</u> <u>id.</u>

HEMIC is allegedly self-insured for the worker's compensation claims of its employees, and thus has a legal duty to act in good faith in dealing with its employees.  <u>See</u> Abbey Decl. ¶ 180.  Abbey alleges that HEMIC refused, "without proper cause, to provide worker's compensation benefits in a reasonably timely fashion."  <u>See</u> <u>id.</u> ¶ 183.  Abbey claims that HEMIC should not have contested her worker's compensation claim because HEMIC had evidence that her claim was compensable.  <u>See</u> Opp'n 27-28.

Dr. George Bussey, who conducted Abbey's IME for HEMIC, was inconclusive on this point, noting that it was an "open question" whether Abbey's concerns that the Brigham Quality Review Project was potentially unethical were or were not reasonable.  <u>See</u> Opp'n 28.  Similarly, the medical slips from Abbey's treating physicians do not establish that her claim was compensable.  <u>See</u> ECF No. 150, Ex. E, Ex. I.  In the first medical slip, Dr. Leonard N. Cupo states that Abbey was to be examined for further evaluation and treatment by Dr. Kenneth Luke.  <u>See</u> ECF No. 150, Ex. E.  In the second medical slip, Dr. Luke indicates that Abbey was incapacitated from December 1, 2007, through December 13, 2007, and would be reevaluated in two

weeks.  <u>See</u> ECF No. 150, Ex. I.  In her Claim for Disability Benefits form, Abbey and her doctor both selected "unknown" in response to whether her alleged disability was work-related.  <u>See</u> ECF No. 89, Ex. S.

Given this evidence, Abbey does not show how she can prove insurer bad faith.

5.    <u>Claim V: Abuse of Process.</u>

Defendants next argue that Abbey fails to demonstrate an abuse of process in the handling of her worker's compensation claim.  The court agrees.

An abuse of process claim has two elements: "(1) an ulterior purpose and (2) a wilful act in the use of the process which is not proper in the regular conduct of the proceeding." <u>Young v. Allstate Ins. Co.</u>, 119 Haw. 403, 412, 198 P.3d 666, 675 (2008).

Abbey's abuse of process claim incorporates HEMIC's handling of her worker's compensation up to the present litigation.  Abbey's claim is deficient because she fails to demonstrate a willful act outside of the legal process incident to participating in litigation by Defendants that constitutes an abuse of process.  "[I]n order to establish an abuse of process claim, the plaintiff must prove a 'willful act' distinct from the use of process per se." <u>Id.</u>, 119 Haw. at 416, 198 P.3d at 679. Without any evidence that the litigation itself has been used for an improper purpose, Abbey does not demonstrate abuse of process.

27

See Young, 119 Haw. at 415, 198 P.3d at 679; see also W. Prosser
& W.P. Keeton, The Law of Torts 897 (W. Page Keeton et al. eds.,
5th ed. 1984) ("[T]he gist of the tort is not commencing an
action or causing process to issue without justification, but
misusing, or misapplying process justified in itself for an end
other than that which it was designed to accomplish."). 
Moreover, as the court has previously stated, "[i]t is wholly
unclear that the filing or handling of a worker's compensation
claim is a procedure incident to litigation."  Order Granting in
Part Defs. Mot. J. Pleadings 8, ECF No. 18.

Abbey complains that HEMIC filed a WC-1 Employer's
Report of Industrial Injury on behalf of Abbey and retained
Brandvold Ku to adjust Abbey's worker's compensation claim.  See
Abbey Decl. ¶¶ 124-25.  HEMIC Human Resources Vice President Faye
Bueno informed Abbey that HEMIC had filed the WC-1 form because
Abbey's stress disability was or could be related to work.  Id.
¶ 99.  Ku sent Abbey a copy of the WC-1 report and requested a
statement and authorization of access to her medical records to
investigate her worker's compensation claim.  Id. ¶ 97.  The
claim went to state officials, who found that HEMIC had to pay
worker's compensation benefits.

Abbey claims abuse of process relating to HEMIC's
opposition to her work-injury claim before the Department Labor
and Industrial Relations ("DLIR").  However, litigation before
administrative agencies is constitutionally protected.  See Sosa

28

v. DirecTV, Inc., 437 F.3d 923, 934-35 (9th Cir. 2006); Freeman

v. Lasky, Haas & Cohler, 410 F.3d 1180, 1183-85 (9th Cir. 2005).

HEMIC appealed the decision, then withdrew the appeal.  This

court has previously stated the appeal did not constitute a bad

faith delay in payment.  See Order Granting in Part Defs. Mot. J.

Pleadings 15, ECF No. 18.

        HEMIC followed the procedures required to report an

alleged work injury, even though Abbey complains about HEMIC's

allegedly aggressive investigation (including forcing her to

submit to a psychiatric IME by Dr. Bussey).  See Abbey Decl.

¶ 150.  That examination complied with section 386-79 of Hawaii

Revised Statutes, which allows a medical examination by an

employer's physician after an injury and during the period of

disability.  Defendants appear to have followed the necessary

procedure.  See DuBois v. Assoc. of Apt. Owners of 2987 Kalakaua,

453 F.3d 1175, 1181 (9th Cir. 2006) (finding no abuse of process

claim given the lack of evidence that the defendants had used

state proceeding process primarily for an ulterior motive).

         Abbey had the obligation of providing evidence of an

ulterior motive.  She does not meet that obligation.

                6.        Claim VI: Intentional Infliction of
                          Emotional Distress.

        Lastly, Defendants argue that Abbey fails to

demonstrate that she suffered intentional infliction of emotional

distress at the hands of Redman and Dove.  The court finds a

triable issue of fact on this claim.

To state a claim for intentional infliction of emotional distress, a plaintiff must show: "1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  Hac v. Univ. of Hawaii, 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).

The court denies Defendants' summary judgment motion with respect to allegedly discriminatory actions taken by Redman and Dove in their alleged aiding and abetting of each other. Abbey alleges that Dove and Redman yelled at her to "be careful where your loyalties lie" and "do as you are told."  Abbey Decl. ¶¶ 13, 23.  Allegedly as a result of Dove and Redman's behavior, Abbey experienced sleepless nights, stomach pains, irregular periods, headaches, high blood pressure, and lightheadedness. Id. ¶ 90.

Defendants' alleged mistreatment and termination of Abbey suffice to create a triable issue as to the alleged intentional infliction of emotional distress.  Abbey claims that she suffered "overwhelming" stress in implementing a program she felt was unethical "after exhausting all avenues to respectfully stop the Brigham Quality Review Program."  Id.  Dr. Bussey recommended against Abbey's return to work at HEMIC until the underlying conflicts and differences of opinion on the management of claims were resolved.  See ECF No. 150, Ex. V.  This opinion was confirmed by Dr. Luke, who stated that Abbey could return to

30

work "as long as it is not under the present supervision or management at HEMIC." See ECF No. 150, Ex. W.  On the present record, the issue of whether Redman and Dove acted outrageously is left for the jury.

V.      CONCLUSION.

         For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment for violation of public policy, insurance bad faith, and abuse of process.  The court denies summary judgment with respect to claimed violations of Title VII and Hawaii Revised Statutes § 378-2, and the intentional infliction of emotional distress claim.  These claims are left for further adjudication.


         IT IS SO ORDERED.

         DATED: Honolulu, Hawaii, December 21, 2010





                          /s/ Susan Oki Mollway
                          Susan Oki Mollway
                          Chief United States District Judge




Abbey v. Hawaii Employers Mutual Insurance Company, et al., Civil No. 09-000545 SOM/BMK; ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.